USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 96-1235

 UNITED STATES OF AMERICA,

 Appellant,

 v.

 PATRICK S. CUNAN,

 Defendant, Appellee.

No. 97-1470

 UNITED STATES OF AMERICA,

 Appellant,

 v.

 RICHARD J. DECATO, JR., ET AL.,

 Defendants, Appellees.

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. William G. Young, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 Coffin and Bownes, Senior Circuit Judges.
 
 

 David S. Mackey, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for
appellant.
 Kevin E. Sharkey on appellees.

September 17, 1998

 
 

 COFFIN, Senior Circuit Judge. This case poses an interesting
problem of res judicata: does a dismissal with prejudice of a civil
forfeiture action bar the subsequent criminal forfeiture of the
same properties by the same sovereign? The district court ruled
that a civil dismissal has preclusive effect, and it thereby
rebuffed the government's attempt to confiscate nine properties
otherwise forfeitable because of their connection to drug
trafficking and money laundering. See 21 U.S.C. 853; 18 U.S.C.
 982. On appeal, the government claims that the district court
erroneously invoked the doctrine of res judicata. We affirm.
 I. Background
 The drug trafficking and money laundering activities that
underlay this case have no direct significance to the appeal, and
we therefore do not review the facts surrounding them in any
detail. It suffices to say that a lengthy and lucrative drug
business operated by Richard DeCato earned him substantial cash
resources that he used to purchase real estate and other items that
he usually put under the name of appellee Patrick Cunan or a Cunan-
controlled company. Cunan also was involved as owner of a business
in New Hampshire through which DeCato allegedly laundered drug
revenues.
 In late 1990 and early 1991, the United States filed three
civil actions seeking forfeiture of Cunan's business, State Scale
Co., and eight parcels of real estate located in Maine. The
government's complaints alleged that the Maine real estate had been
purchased with proceeds from DeCato's illegal drug trafficking and
that State Scale had been used to facilitate drug trafficking and
money laundering, rendering the properties forfeitable under 21
U.S.C. 881 and 18 U.S.C. 981, respectively. Cunan, the named
owner of the properties, filed claims for all of them.
 The civil actions were pending when, in February 1993, DeCato,
Cunan, and Cunan's wife, Patricia, were indicted by a federal grand
jury sitting in Boston on charges of violating federal drug laws,
conspiracy and money laundering. Count 5 of the indictment,
against Patrick Cunan only, sought to forfeit his interest in State
Scale pursuant to 18 U.S.C. 982, which provides for criminal
forfeiture when property has been linked to money laundering. 
Count 37 of the indictment, against DeCato only, sought forfeiture
of his interest in properties constituting proceeds, or involved in
the facilitation, of illegal drug trafficking. The eight Maine
properties at issue in the Maine civil proceedings were included.
 Six days after the return of the criminal indictment, the
United States filed motions to dismiss the two Maine civil actions. 
The government explained its action as follows:
 The principal reason that Plaintiff seeks the
 dismissal is judicial economy; that is, the property
 which is the subject of this action is the same as that
 of the criminal action now pending in Massachusetts. 
 Regardless of the outcome of this civil action, the
 criminal indictment in Massachusetts will go forward to
 trial on the merits. Continued litigation in this action
 is therefore a waste of the Court's time.

The United States and Cunan, the only claimant in the two Maine
proceedings, agreed to a dismissal with prejudice in the northern
Maine case. See Fed. R. Civ. P. 41(a)(1).
 In the southern Maine proceeding, Cunan sought an opportunity
to move for costs and fees before the action was dismissed. The
court denied his request and dismissed the action without
prejudice, finding the dismissal "to be in the best interests of
justice and in accordance with consideration of judicial economy." 
See Fed. R. Civ. P. 41(a)(2). Cunan thereafter renewed his motion
for an opportunity to request costs and fees and also asked that
the dismissal be changed to "with prejudice." The government
opposed the request for leave to move for costs and fees, but took
no position on whether the dismissal should be granted with or
without prejudice. In April 1993, the court amended its previous
order to make the dismissal "with prejudice," but declined to
disturb its earlier ruling against costs and fees.
 In November 1993, the Cunans moved in the Massachusetts
criminal case to dismiss the eight Maine properties from Count 37,
arguing that the voluntary dismissals with prejudice in the civil
proceedings barred the United States, on the ground of resjudicata, from attempting to forfeit those same assets in the
criminal case. The Massachusetts district court granted their
request, but this court later vacated its order as premature. SeeUnited States v. Real Property in Waterboro, 64 F.3d 752, 756 (1st
Cir. 1995). We held that the Cunans were obliged to wait until an
order of forfeiture was entered before advancing their claim
preclusion argument.
 Meanwhile, the New Hampshire civil forfeiture case involving
Cunan's business had taken a somewhat different course. In May
1992, the New Hampshire district court stayed the case "pending the
resolution of criminal proceedings, if any, against claimant." In
December 1994, the district court issued an order stating that it
would not continue the stay beyond April 1995. The United States
responded by filing a motion to dismiss the case without prejudice. 
By that time, the Massachusetts court in the criminal case had
ruled that res judicata principles barred the criminal forfeiture
of the Maine properties, and so the United States advised the New
Hampshire court that "a dismissal of this case with prejudice will
be held by the [Massachusetts] court to be res judicata . . . ,
preventing forfeiture of State Scale, Inc. in that case." The New
Hampshire court denied the motion without explanation and set the
civil case for trial.
 This created two problems for the government. First, the
criminal trial was scheduled to begin at virtually the same time,
and prosecutors thus faced two trials involving the same actors and
actions in different jurisdictions. Second, Cunan filed notices in
the New Hampshire civil case seeking to depose government witnesses
in the Massachusetts criminal case, potentially exposing key
criminal witnesses to questioning outside the criminal process. To
eliminate these conflicts, the government moved to dismiss the New
Hampshire case with prejudice, asserting that
 [i]nasmuch as the property which the United States has
 sought to forfeit in the instant civil case is also
 sought to be forfeited in the criminal prosecution,
 Plaintiff has determined that continuation of the instant
 civil case would expend unnecessary resources of the
 prosecution and of this Court.

The district court granted the motion on September 5, 1995,
stating: "I take no position as to the reasons for the dismissal
with prejudice or the merits of any claim for attorneys' fees that
may be made at some future time."
 All three civil cases having been dismissed with prejudice,
the scene shifted fully to the criminal proceedings in
Massachusetts. DeCato pleaded guilty to various counts in the
indictment, and admitted that the Maine properties listed in Count
37 were purchased with proceeds linked to his unlawful conduct and
thus were forfeitable. The district court entered a forfeiture
order against the eight parcels, and Cunan filed a now timely
petition asserting a superior interest based on the Maine
dismissals.
 Similarly, following dismissal of the New Hampshire civil
case, Cunan filed a motion to dismiss the entire criminal
indictment in Massachusetts on the grounds of double jeopardy and
res judicata/collateral estoppel. The motion was denied, the trial
went forward, and the Cunans were found guilty on all counts. The
jury also returned a special verdict on Count 5 forfeiting Cunan's
interest in State Scale. Cunan then renewed his motion to dismiss
Count 5, and this time the district court granted it, ruling in
January 1996 that the final judgment in the New Hampshire case
barred the criminal forfeiture. In February 1997, the district
court again accepted Cunan's res judicata argument regarding the
eight Maine properties and granted his petition claiming priority
to the parcels.
 When the dust settled, then, the government was left with
successful prosecutions -- DeCato having pleaded guilty and the
Cunans having been convicted by a jury -- and confirmation that the
properties at issue in this case were forfeitable -- through
DeCato's admissions regarding the Maine parcels and the jury's
finding on State Scale -- but a ruling from the Massachusetts
District Court that negated the criminal forfeitures. On appeal,
the government urges us to find that the district court erred in
giving preclusive effect to the civil forfeiture proceedings.
 II. Discussion 
 We begin with a few basic principles. First, the federal
doctrine of res judicata, or claim preclusion, bars a subsequent
action whenever three criteria are met: (1) there is a final
judgment on the merits in an earlier action; (2) "sufficient
identity" exists between the parties in the earlier and later
suits, and (3) "sufficient identity" exists between the causes of
action in the two suits. See Porn v. National Grange Mut. Ins.
Co., 93 F.3d 31, 34 (1st Cir. 1996); Kale v. Combined Ins. Co. of
America, 924 F.2d 1161, 1165 (1st Cir. 1991).
 Second, a voluntary dismissal with prejudice is ordinarily
deemed a final judgment that satisfies the res judicata criterion.
See Lawlor v. Nation Screen Serv. Corp., 349 U.S. 322, 327 (1955)
(judgment dismissing "the previous suit 'with prejudice' bars a
later suit on the same cause of action"); Langton v. Hogan, 71 F.3d
930, 935 (1st Cir. 1995) ("A judgment that is entered with
prejudice . . . by stipulated dismissal . . . bars a second suit on
the same claim or cause of action."); Harrison v. Edison Bros.
Apparel Stores, Inc., 924 F.2d 530, 534 (4th Cir. 1991) ("A
voluntary dismissal with prejudice under Fed. R. Civ. P. 41(a)(2)
is a complete adjudication on the merits of the dismissed claim.");
9 Charles Alan Wright & Arthur R. Miller, Federal Practice &
Procedure 2376 at 319-320 (2d ed. 1995) ("Dismissal with
prejudice, unless the court has made some other provision, is
subject to the usual rules of res judicata . . . .").
 Third, in defining a "cause of action" for purposes of resjudicata, the First Circuit adheres to a broad "transactional"
approach that embraces "'all rights of the plaintiff to remedies
against the defendant with respect to all or any part of the
transaction, or series of connected transactions, out of which the
action arose.'" Manego v. Orleans Bd. of Trade, 773 F.2d 1, 5 (1st
Cir. 1985) (quoting Restatement (Second) of Judgments 24 (1982));
see also Porn, 93 F.3d at 34.
 Because it is undisputed that the Maine and New Hampshire
civil proceedings at issue here involved the same parties and ended
with final judgments, the applicability of res judicata to the
circumstances of this case turns on the third criterion noted
above: whether the civil and criminal forfeiture proceedings
involved the same cause of action. The district court concluded
that "the causes of action are identical because they are aimed at
the forfeiture of the same properties." The government contends
that that determination is overly simplistic and ignores
significant differences between the two proceedings that render resjudicata inapplicable. We review de novo the district court's
ruling. See Gonzalez v. Banco Central Corp., 27 F.3d 751, 755 (1st
Cir. 1994).
 Probably the most compelling of the government's arguments is
that, because of their very different natures, a prosecution and a
claim for a civil remedy are distinct causes of action that may be
pursued independently. As a general matter, this assertion seems
supported by precedent and logic. Ample authority is available for
the proposition that "civil and criminal proceedings, although
based upon the same facts, do not involve the same cause of action,
[and] a judgment in one proceeding is not res judicata . . . in the
other proceeding." 1B Moore's Federal Practice 0.418 [1] (2d ed.
1993); see also Restatement (Second) of Judgments 85 (comment a)
("A prosecution and a claim for a civil remedy are regarded as
separate causes of action that may be independently pursued. . .
."); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
Federal Practice & Procedure 4474, at 748 (1981) ("Wright &
Miller) ("Claim preclusion does not extend from criminal
prosecutions to civil actions."); United States v. Parcels of Real
Property, 913 F.2d 1, 4 (1st Cir. 1990) (rejecting defendant's
argument that his state narcotics convictions should have no
collateral estoppel effect, in part because they were on appeal,
because, inter alia, civil forfeiture proceeding is independent of
related criminal prosecution); United States v. Mumford, 630 F.2d
1023, 1027 (4th Cir. 1980) (res judicata inapplicable between SEC
proceeding for injunctive relief and criminal convictions).
 The logic behind the dichotomy is easy to understand. Because
criminal and civil remedies cannot be pursued in the same
proceeding, it would seem unjust for the failure to seek both at
the same time to trigger res judicata consequences. See 18 Wright
& Miller 4407, at 51 ("[C]laim preclusion cannot extend beyond
the limits of an action that can be brought before a single
court."); id. at 4474, at 748 ("Our traditional division between
civil and criminal procedure does not contemplate any opportunity
for joining any civil claim with the criminal prosecution.");
Massachusetts School of Law at Andover v. American Bar Ass'n, 142
F.3d 26, 38 (1st Cir. 1998) ("[R]es judicata will not attach if the
claim asserted in the second suit could not have been asserted in
the first."); Kale, 924 F.2d at 1167-68 (well settled exception to
transactional test where plaintiff unable to seek certain remedy or
form of relief in the first action because of restrictions on the
court's authority); Pasterczyk v. Fair, 819 F.2d 12, 14 (1st Cir.
1987). Thus, while the transactional test may be broad enough to
cover both a civil action and a criminal prosecution arising from
the same series of events, the barrier imposed by jurisdiction
appears to require a loosening of res judicata's restrictions. 
 The support for segregating civil and criminal proceedings is
inapt, however, in the specific circumstances present here. None
of the cases and treatises noted above dealt with a situation in
which the civil and criminal actions sought precisely the same
outcome, the forfeiture of the identical pieces of property. The
distinction ordinarily is drawn between a prosecution for criminal
conduct, punishable by incarceration, and a civil action that seeks
to impose some other remedy or sanction. Here, although the
structural criminal/civil difference remains, the substantive issue
and the government's objective are the same in both settings. 
Indeed, the government's basis for dismissing the civil proceedings
was that they were duplicative of the criminal action.
 Whatever rationale exists for departing from the standard
definition of "cause of action" to classify criminal and civil
claims separately certainly dissipates in these circumstances,
where allowing the criminal forfeiture unquestionably would give
the government a second bite at the very same apple. In this
setting, it seems illogical to abrogate the res judicata doctrine
based on the fact that the civil and criminal proceedings could not
take place in the same forum; by definition, these are alternative
paths to the same goal, and if one proceeding leads to a final
judgment that substantively resolves the property dispute,
revisiting the question in the other forum would present a classic
case of repetitive litigation. Cf. Northern Natural Gas Co. v.
Grounds, 931 F.2d 678, 683-84 (10th Cir. 1991) (in personam action
for attorney's fees and separate action for portion of a fees fund
are on the same claim for res judicata purposes).
 In addition to the distinction based on the available forum,
the government argues that criminal and civil forfeitures should be
treated as separate causes of action because the procedures
incident to each are dissimilar. It notes that conviction is a
prerequisite for criminal forfeiture but not civil forfeiture, that
each procedure has differing burdens of proof, and that, unlike in
the civil setting, if the property sought in a criminal action has
been disposed of, the court can order forfeiture of any other
property of the defendant up to the value of the missing
forfeitable property. See 21 U.S.C. 853(p).
 Claim preclusion does not require an exact match, however. 
See Massachusetts School of Law at Andover, 142 F.3d at 38 ("To
bring claim preclusion into play, a cause of action need not be a
clone of the earlier cause of action.") The relevant test simply
asks whether the same parties pursued a remedy that arose from the
same "transaction" in an earlier proceeding that ended with a final
judgment. Minor variations in the proceedings -- for example, the
difference between an initial finding of forfeitability by a
preponderance of the evidence in the criminal case and the probable
cause finding in the civil case -- are insufficient to establish
separate causes of action. Indeed, res judicata is intended to
foreclose parties from multiple attempts to obtain relief for the
same harm through the use of new legal theories. See Diversified
Foods, Inc. v. First National Bank of Boston, 985 F.2d 27, 30 (1st
Cir. 1993); Restatement (Second) of Judgments 24, comment c (same
claim involved even where "several legal theories . . . would
emphasize different elements of the facts, or would call for
different measures of liability or different kinds of relief"). 
Here, the similarity in the burdens looms much larger than any
differences; in both proceedings, a claimant must establish
priority over the property by a preponderance of the evidence.
 Some differences in burden can, of course, be extremely
important in analyzing the res judicata consequences of duplicative
civil and criminal proceedings. If a criminal judgment ends
without a conviction, and thus without a forfeiture of property,
the government may pursue the property through the civil
proceeding. United States v. One Assortment of 89 Firearms, 465
U.S. 354, 361 (1984). This is permissible because a jury's
determination that the charged crime has not been proved beyond a
reasonable doubt does not foreclose the government from pursuing a
civil forfeiture based on the lower preponderance of the evidence
standard. Id. at 361-62; United States v. Dunn, 802 F.2d 646, 647-
48 (2d Cir. 1986). A quite different dynamic is at play when the
civil proceeding has been resolved first, and the final judgment
establishes that the government has not met the less onerous
burden.
 The government offers several reasons why res judicata should
not be applied to this case even if the criminal and civil
proceedings are deemed to constitute the same cause of action. It
maintains that application of res judicata here would be
inconsistent with the doctrine's underlying goals of conserving
judicial resources and avoiding multiple lawsuits, conflict with
the district courts' intentions in dismissing the civil forfeiture
actions, unfairly result in a windfall for the defendants, and
frustrate Congress's intentions in providing for forfeiture. We
address each in turn.
 The purpose of res judicata is to "'relieve parties of the
cost and vexation of multiple lawsuits, conserve judicial
resources, and, by preventing inconsistent decisions, encourage
reliance on adjudication.'" Apparel Art Int'l, Inc. v. Amertex
Enterprises Ltd., 48 F.3d 576, 583 (1st Cir. 1995) (quoting Allenv. McCurry, 449 U.S. 90, 94 (1980)). The government says that it
requested dismissal of the civil action because of a concern about
judicial economy and the logistical difficulties of pursuing the
civil and criminal proceedings in different locations at the same
time. The government asserts that, if the criminal dismissals are
not reversed, it will be required in the future to pursue multiple
proceedings in multiple forums to avoid the consequences of resjudicata.
 We are unpersuaded that the interests underlying res judicataare best served in this case by re-activating the criminal
forfeiture. The United States Code specifically contemplates the
possibility of duplicative forfeiture proceedings and provides a
mechanism for a stay of the civil proceedings pending resolution of
the criminal case. See 21 U.S.C. 881(i) (stay of civil
forfeiture proceedings involving drug trafficking). See also 18
U.S.C. 981 (g) (stay of civil forfeiture proceedings involving
money laundering). This scheme appears to provide the government
with the best of both the civil and criminal structures: from the
time of the civil filing, the property sought by the government is
restrained, and if the subsequent criminal proceeding is
unsuccessful, the government can resume its efforts to obtain the
property civilly. If the criminal forfeiture succeeds, the civil
case can be dismissed.
 The New Hampshire district court did, in fact, stay the State
Scale forfeiture proceeding for three years, from May 1992 to April
1995. When the court announced that it would lift the stay and set
a trial date, the government made no request to extend the stay and
instead moved for a dismissal, first with prejudice and later
without. See supra at 5-6. In Maine, Cunan had sought a stay
relatively early in the proceedings, but the government opposed the
motion and the district court denied it. There, too, a stay,
rather than dismissal, would have been a viable option once the
criminal indictment was filed. 
 It seems to us, based on this history, that the government had
available a possible method for avoiding duplicative proceedings,
and the waste of its own and judicial resources, but chose not to
pursue it. Cunan suggests that, in the Maine case, the original
opposition to a stay was a deliberate tactical decision that
enabled the government to move forward with civil discovery for
three years, at great expense to him. Whatever the motivation, we
are disinclined to grant the government a second opportunity to
litigate the same question, bypassing the normal operation of resjudicata, when it did not take advantage of an available mechanism
to avoid this very problem. It is the government's position, not
Cunan's, that seems at odds with the principles of claim
preclusion.
 As for the intentions of the Maine and New Hampshire district
courts, it appears that at least the Maine court contemplated that
the criminal proceedings would go forward when the civil
proceedings were dismissed. Both Maine and New Hampshire courts,
however, granted dismissals with prejudice, presumably aware that
such judgments are final for purposes of res judicata. In the New
Hampshire case, in fact, the government initially requested a
dismissal without prejudice explicitly because of the res judicataproblem, but the court denied the motion. Rather than appeal, the
government then sought a dismissal with prejudice. In granting it,
as noted earlier, see supra at 6, the district court observed that
it took "no position as to the reasons for the dismissal with
prejudice." That court might have felt that the government was
free to tackle the res judicata problem in Massachusetts, if it so
wished. Moreover, even if either of the dismissing courts was
operating on the assumption that res judicata would not bar the
criminal forfeiture, there is no dispute that they intended final
judgments on the civil proceedings. Any mistake by them about the
res judicata effect of such judgments is not, we think, a basis for
negating the doctrine.
 Nor is there a persuasive argument that fairness requires a
reprieve from the normal operation of res judicata. The government
argues that barring the criminal forfeiture results in an unjust
windfall for the Cunans, and it points to our statement that this
court has "recognized the existence of judicial power to make an
'occasional exception' to claim preclusion in order 'to prevent
undue hardship.'" See Kale, 924 F.2d at 1168 (quoting Rose v. Town
of Harwich, 778 F.2d 77, 82 (1st Cir. 1985)). We are hard pressed
to characterize this as a situation of "undue hardship," and the
Supreme Court has discouraged if not forbidden resort to equity as
a way of avoiding res judicata:
 The doctrine of res judicata serves vital public
 interests beyond any individual judge's ad hoc
 determination of the equities in a particular case. 
 There is simply "no principle of law or equity which
 sanctions the rejection by a federal court of the
 salutary principle of res judicata" . . . . We have
 stressed that "[the] doctrine of res judicata is not a
 mere matter of practice or procedure inherited from a
 more technical time than ours. It is a rule of
 fundamental and substantial justice, 'of public policy
 and of private peace,' which should be cordially regarded
 and enforced by the courts . . . ."

Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981)
(citations omitted). See also 18 Moore's Federal Practice 
131.12[3] (3d ed. 1998) ("The doctrine of claim preclusion is not
concerned with whether . . . considerations of fairness should
merit a different result in the subsequent litigation. . . . The
need for final resolution of litigated claims often takes
precedence over concerns of fairness or justice in individual
cases."); id. at 131.24[6] ("The Supreme Court's decision in
Federated Dep't Stores, Inc. v. Moitie dooms to failure any attempt
to avoid application of the claim preclusion doctrine on the
grounds that such application in a particular case is unfair,
unjust, or unduly harsh."). Here, where the government had the
opportunity to seek a stay of the civil proceedings pending
completion of the prosecution, we see no equitable justification
for departing from basic preclusion principles. 
 Finally, we reject the notion that the district court's
decision barring this forfeiture undermines Congress's effort to
deter drug trafficking through an attack on "the economic aspects
of these crimes." See S. Rep. No. 225, 98th Cong., 2d Sess. Sec.
I, reprinted in U.S. Code Cong. & Admin. News 3182, 3184. While
the outcome of this case may be termed a windfall for DeCato and
Cunan, it does not put at risk either the mechanism of forfeiture
or the choice available to the government to proceed through a
civil action, a criminal action, or both. The government simply
cannot evade the normal operation of res judicata when it litigates
a civil forfeiture case to final judgment. The flexibility built
into the forfeiture scheme, entitling the government to a stay "for
good cause shown," protects both the government's right to
confiscate property used for unlawful purposes and claimants'
rights to be free from the "cost and vexation of multiple
lawsuits," Apparel Art Int'l, Ltd., 48 F.3d at 583.
 Two circuits have indicated agreement, albeit in dicta, with
the view that res judicata applies to this factual scenario. The
Eighth Circuit, in United States v. Maull, 855 F.2d 514 (8th Cir.
1988), considered the dismissal of a civil forfeiture action by a
Colorado district court. The notation did not indicate whether the
dismissal was with or without prejudice. The panel majority
assumed that the dismissal was without prejudice, thus not a final
judgment on the merits, "and that res judicata did not bar the
criminal forfeiture proceeding." Id. at 517. Implicit in its
ruling is the conclusion that if the civil forfeiture dismissal hadbeen with prejudice, res judicata would have been applicable. 
Judge Richard Arnold, in dissent, was more explicit. He disagreed
that the original judgment was without prejudice, and argued that
"[t]his adjudication must operate as a bar to the later assertion
of the same claim." Id. He stated:
 Here, although the form of the later action was
 different, criminal as opposed to civil, the same
 property was involved, the same claimants, and the same
 underlying purpose: to deprive [the defendant] of the
 fruits of his crime.

Id. 

 A case factually related to Maull reached the Tenth Circuit
three years later. In United States v. Lots 43 Through 46, 935
F.2d 1134, 1137-38 (10th Cir. 1991), involving the same criminal
forfeiture at issue in Maull, the court ruled that res judicataprinciples required it to accept earlier decisions on the resjudicata effect of the civil forfeiture proceeding. The court,
however, expressed its agreement with Judge Arnold's dissent:
 If we were writing on a clean slate we would, in
 fact, be inclined to views about the case consistent with
 the persuasive dissent of Judge Arnold . . . . [T]he
 Colorado District Court's dismissal (which we agree with
 Judge Arnold should be viewed as with prejudice) of the
 civil forfeiture proceeding in Colorado should have been
 held to bar the subsequent criminal forfeiture proceeding
 in Missouri.

935 F.2d at 1137-38.
 
 For the foregoing reasons, we, too, conclude that res judicata 
bars a criminal forfeiture following dismissal with prejudice of a 
prior civil forfeiture proceeding involving the same property. We 
therefore affirm the judgment of the district court.
 Affirmed.